Mr. Drell, may it please the Court, my name is Bradley Drell and I represent Raymond James & Associates, Daniel Sitar, and George Longo in this matter. This case began as a bankruptcy case before the Bankruptcy Court in the Western District of Louisiana, Lafayette Division, German Pellets, Louisiana, LLC, and Louisiana Pellets, LP. Prior to the bankruptcy, my clients had enabled the debtors to sell bonds to finance the construction of wood pellets facilities in Urania, Louisiana. The way it worked is that the bonds were issued by the Louisiana Public Facilities Authority and then my client underwrote the bonds, in other words, they vetted the debtors' representations in the bonds, and then prepared what was called a limited offering memorandum, and the bondholders are generally institutional investors, meaning these weren't sold via your local broker to That limited, the documents associated with the offering stated that the debtors would indemnify my clients for any misstatements in the limited offering memorandum issued in connection with the bonds. During the bankruptcy, the wood pellet facilities were sold for a lot less than the bondholders were owed and even unsecured creditors generally, and the Bankruptcy Court approved a liquidating plan after the sale that appointed a liquidating trustee and created a trust into which the remaining bankruptcy assets would go, mostly causes of action. The plan was confirmed on September 8, 2017. On February 16, 2018, the liquidating trustee, Craig Jalbert, filed the underlying state court litigation that's now been removed to federal court against the debtors' officers and directors. In April of 2019, after some investigation, he solicited bondholders to assign their securities law claims to him for prosecution, but on behalf of the liquidating trust created by the plan. In June of 2019, almost two years after confirmation, Mr. Jalbert amends his petition to name Raymond James & Associates, Daniel Sitar, and George Longo. When we got around to answering that petition, we raised the issue of those indemnity agreements I just mentioned, and Mr. Jalbert went back to Bankruptcy Court and instituted the instant adversary proceeding, and this appeal followed. The court granted Mr. Jalbert's summary judgment motion, ruling that the plan barred by both discharge language and injunction, us being able to use our rights of setoff using those indemnity agreements against Mr. Jalbert's assigned claims from the bondholders. The issues before the court are as follows. One, what is the effect of those assignments to Mr. Jalbert? There's a longstanding case known as Kaplan out of the United States Supreme Court that's been interpreted by the Fourth Circuit in Bogdan and also applied in the United States District Court in the Northern District of Texas, which essentially says for a bankruptcy trustee to receive an assignment of a cause of action, that claim has to become an estate claim. Kaplan had prohibited bankruptcy trustees from prosecuting third-party claims, and so in an artful way to attempt to enhance the estate, these claims assignments have to be made essentially to the estate. In other words, they have to be for the benefit of all creditors and not just the bondholders. And so we think that because those claims were assigned as estate claims, that the Newberry case versus fireman's fund that we cite in our briefs out of the Ninth Circuit, that that makes those claims subject to the defenses of set-off. In Newberry, an insurance company had assigned a claim to the debtor against a provider of equipment, and the provider of equipment was owed money by the debtor. The defendant raised the issue of set-off, and the Ninth Circuit agreed and said that you could set-off against the claims, the assigned claims from the insurance company. The second headline issue, though, is can a Chapter 11 plan bar a right of set-off? And the issue with a Chapter 11 plan barring the right of set-off is that it's not permissible under Chapter 11 of the Bankruptcy Code, one, to enter an order where a liquidating debtor gets a discharge, but the Court nevertheless did that in this case. But then this turns on Section 553 of the Bankruptcy Code, which is the set-off statute. That statute is unique in its language in how it sets out the rights of set-off and how they apply in bankruptcy. To quote part of it, it says, We would submit that this language means that not only could the bankruptcy court not bar the rights of set-off, but that it lacked jurisdiction to do so, because Section 553, by its language, this title shall not affect, effectively remove, the right of set-off from the creditors of the debtors. It removes the ability to entertain a request to interfere with the right of set-off, much less grant it. Again, bankruptcy court jurisdiction is wholly grounded in and limited by the Bankruptcy Code, as this Court noted in the Bissonnet case cited in our briefs, particularly the reply brief. Taking 553's language of the title, this title does not affect any right of accreditor offset, when we analyze legal issues, we have to start with the statute. And recently, the Supreme Court, in the MOAC case, which we cite in the reply brief, it came out after our initial brief had been filed. That involved the Mall of America case in Sears, and the issue was whether or not 363M was jurisdictional. The Court found that it was not. But Section 553 is different because it does not merely place on the litigants certain burdens, and it doesn't basically say this is how you go about getting a right of set-off. This title shall not affect as unique jurisdictional language removing the issue of state law set-off from the purview of the Bankruptcy Court. I welcome the Court's questions. Well, you need to be a little more directed. So what do you want? Tell me. I mean, I've read all the briefs, although I have to say that was two weeks ago. Fair enough. What do you want? What we want is for the Court to reverse the Bankruptcy Court and enter an order allowing Raymond James and Associates, George Longo and Daniel Sitar, to be able to assert their rights of set-off in the underlying litigation now pending in the United States District Court for the Western District of Louisiana. We're not asking the Court to make an ultimate determination about whether those defenses are good, but to simply say that the plan does not bar these. And, Your Honor, I would point to a case from 20 years ago that, Your Honor, was on a per curiam panel, and that's the Romero v. Border Steel Rolling Mills Inc. case. And it can be found at 54 Federal Appendix 591, and that's a 2002 case where this Court reversed a Bankruptcy Court that had refused to modify an injunction to allow a personal injury plaintiff to go forward in state court. As you know, the Texas laws do not permit a direct action against an insurer without naming the insurer as a nominal defendant. The Bankruptcy Court refused to modify its injunction prohibiting proceeding against the debtor, and this Court reversed and said, Bankruptcy Court, you should have modified your injunction to allow this claim to go forward. So we would like you to follow the Romero model and simply modify the injunction and claims bar language in the plan to allow us to go forward and assert our rights of setoff in the underlying litigation. Now, the Bankruptcy Court did what? I'm backing up here. You're... Sure. The Bankruptcy Court confirmed a plan that contained a lot of language that is beyond the scope of what most Chapter 11 plans are allowed to do. Well, that won't be the first time that's happened. And I think the courts are now looking at those issues critically, including at the Purdue Pharma case that's now at the Supreme Court. They're looking at it again and saying, okay, what are their powers under the Bankruptcy Code, and are they exceeding those powers? And here we're suggesting that the Bankruptcy Court exceeded its powers by including language in a liquidating plan that barred the right of setoff, both by injunction and by language claiming to discharge those claims. And what we're suggesting is, is that 553, with its, this title shall not affect language, meant that the Bankruptcy Court was without jurisdiction to enter into that order and that the court should therefore relieve Raymond James, Daniel Sitar, and George Longo of having to forego their defenses of setoff under the indemnity agreements. Why didn't James preserve his rights during the confirmation process? Well, one, we weren't noticed as creditors and we weren't listed as creditors, and while we were aware of the bankruptcy, we weren't served with any of that stuff. And for us to be barred in that situation, I would point the court to Travelers' Indemnity v. Bailey out of the U.S. Supreme Court 129, Supreme Court 2195, as interpreted by this court in Brown v. Chestnut, and that's 356 Federal Appendix 732. That's a 2009 case from this court. For us to be barred by the plan, those two cases stand for the proposition that we were, one, a party to the original proceeding, and two, we had a fair chance to raise the issue. And here we weren't an actual party to the proceeding, nor were we given a fair chance to raise the issue because we weren't served with anything. Moreover, at the time, we really didn't have a case or controversy pending with the debtors. The bondholders had not yet sued us, and while the bankruptcy court found that we possibly knew or should have known that we might get sued sometime in the future, under Section 502e1b of the Bankruptcy Code, and let me back up a little bit, to understand the nature of a securities fraud claim, generally you have a claim if a security has been sold with misrepresentations, you have a claim against the issuer, which in this case would be German Pellets and Louisiana Pellets, and the underwriter, the seller of the bonds, here Raymond James. And under 502e1b, if a creditor's claim is contingent and one for indemnity and one in which it's liable with the debtor, the claims are disallowed. And so essentially what the bankruptcy court said is that we had to file a proof of claim that was going to be disallowed in order to preserve our set-off rights, and it really would have been a frivolous claim to have filed it given that the indemnity rights were still contingent because we hadn't been sued and because we were liable under the debtor, and the bankruptcy court has a black-letter law that says you don't get a claim in that instance. So filing a proof of claim wouldn't have gotten anywhere, and we more than likely didn't even have standing to object given the bankruptcy court's disallowance of our claim. Does that answer your question, Judge Douglas? And why does Section 553, why should it yield to Section 1141? Because it says this title shall not affect, whereas 1141 is not one of the enumerated exceptions to Section 553. Section 553 makes certain exceptions for the automatic stay and for people who acquire rights of set-off in a preferential manner, and what I mean is they acquire the right of set-off within the 90-day preference period of the bankruptcy code in order to gain an unfair advantage over other creditors. And so those are the two carved-out exceptions. But confirmation of a plan is not one, and in our Rule 28J letter, we attached a recent bankruptcy case from New Jersey that noted that 522, the exemption statute, also does not override Section 553. And so, I mean, 553, with its express, this title shall not affect language, is special. It's different. It implicates jurisdiction, and you have to have a specific exception for it to override it. Thank you. Thank you, Your Honor. Who was the bankruptcy judge here? Well, there were two. First, we had Judge Bob Summerhays, who handled the confirmation of the original plan, and he ascended to the district bench, as you well know, and then Judge John Colway sat on this adversary proceeding. With that, Your Honor, I would reserve the balance of my time for rebuttal. Good morning. May it please the Court, Brent Barrier, on behalf of the liquidating trustee. I think it's appropriate to start, Judge King, with actually the question you posed, which is not only what do you want us to do, but how do we possibly do it? The latter question has never been addressed by Raymond James, and frankly can't be, because there is no statutory or procedural mechanism for this court, or the district court at this late stage, to simply rewrite the confirmation order, an order that was issued and entered a little over four years ago. Rule 60, which they would rely on, in fact appears as Rule 9024 in the bankruptcy rules. It generally tracks Rule 60, but it says the complaint to revoke a confirmation order is subject to 11 U.S.C. 1144. And that section, of course, conditions that complaint upon, one, it being based on an allegation of fraud, and two, being filed within 180 days of the entry of the confirmation order. Raymond James, of course, has never asserted that confirmation order was secured by fraud, and quite obviously it's never challenged the confirmation order by way of complaint. This sort of notion that the court should rewrite it first appears in their opposition to a motion for summary judgment, which was lodged in 2022. They've also suggested, well, you can simply modify the confirmation order, simply modify the confirmation order. Well, there is a provision in the code that permits modifications, 1127 of Title 11, but that is limited to the proponent of the plan seeking modification prior to consummation of the plan. Well, that occurred here years ago, a long time ago, and I might add the proponent of the plan wasn't Raymond James. It was German Pellitz and Louisiana Pellitz. Raymond James would have the court believe that it was somehow oblivious to this bankruptcy proceeding, a bankruptcy proceeding, I might add, that was filed a mere seven months after the last of the bond issues that financed this extraordinary albatross in Urania, Louisiana. Well, the reality is, of course, they monitored the case. They were aware of the filing of the case, and indeed the district court observed that Raymond James, a highly sophisticated entity with counsel, made a conscious decision not to make an appearance in the bankruptcy case, and presumably because they didn't want to be noted and associated with this extraordinary financial failure. Well, I believe if I understood correctly, it says there was no case or controversy at that time. Well, indemnity claims must be filed if they fall within the definition of claim, and regardless whether there's a claim or controversy. I mean, this, for example, in one of the cases we cite, the plumbing work done prior to plan confirmation had shown no deficiency whatsoever. There was no claim filed. Likewise, in other cases, there's no indemnity claim yet filed, but those are still pre-petition claims if the contract predates the confirmation of the plan. And here, all of the contracts at issue long predate. But, you know, I have to admit, Your Honor, the one point that I kept expecting I'd hear a moment ago is an acknowledgment that the set-off rights and the indemnity rights have nothing to do with the party that I represent. The indemnity was granted by Louisiana Pellets. It no longer exists. That debtor went through liquidation. The set-off rights, if they ever existed, existed vis-à-vis Louisiana Pellets, right? And what Raymond James is saying, in effect, is they want this Court to conclude that indemnity obligations owed not by the liquidating test but by Louisiana Pellets should somehow bind the liquidating trust. That's their first point. And then they want you to say that they get rights of set-off, notwithstanding Section 553, which is the fulcrum of their argument, limits the set-off safe harbor to set-off rights that existed pre-petition, which is also not the case here. It specifically talks about debts owed to and from prior to the petition. This Court has repetitively recognized, and Raymond James grusingly admits, that a liquidating trust, a post-confirmation entity, is not the same entity as the debtor. It is not the same entity as the debtor as a state. Indeed, Raymond James acknowledges that. But, you know, this liquidating trust, it kind of has powers like a debtor or a debtor in possession or a state, so it should be deemed one. There's no authority for that whatsoever. Indeed, the Bankruptcy Court, in its lengthy opinion, the District Court, in its quite lengthy opinion, emphasized that this trust was carefully designed such that it secured certain assets to the debtor, but none of its liabilities whatsoever. Those debts remained with and were discharged as part of the plan by the debtor. So, to get to your vector, where you were to begin with, how do I give you this remedy? You must accept a complete fiction that the plan should not apply to Raymond James, a plan that expressly bars its indemnity claims, that those indemnity obligations somehow survive and somehow are the loan debt transferred to liquidating trust, that the bar of set-off rights that appears in the plan is inapplicable, but here, somehow, these are post-petition set-off rights because these assignments occurred years after a planned confirmation. Needless to say, the Bankruptcy Court found, I believe by recollection, six fatal flaws in the reasoning of Raymond James, and the District Court affirmed in all respects. That was why Raymond James was ultimately left saying, Help us out. Use Rule 60 just to help us out, which is pretty much the answer you got earlier. Rewrite this plan. Rewrite this order. Here's that effect. With all due respect, this Court has many powers, but statutorily, these powers are circumscribed and simply do not exist as convened and demanded by Raymond James. Simply do not exist. Unless the Court has questions, I'll be happy to cede the balance of my time. Thank you. Thank you. To briefly address Mr. Barrier's comments, he stated that the Court is bound and cannot enter relief for Raymond James, Daniel Sator, and George Longo because of the restraints of Section 1144 and 1127 of the Bankruptcy Code. But I would point again to the Romero v. Bordersteel-Rolling Mills case I cited in my earlier argument, where the Court noted that the Bankruptcy Court's ability to modify an injunction entered into a plan was not constrained by either of those sections. The Bankruptcy Court had specifically cited to those sections, saying I cannot grant the plaintiff relief in this case, and this Court reversed and said, no, the modification of a plan injunction does not require complete modification of the plan under 1127 or revocation of the confirmation order under Section 1144. The other point I want to make is that the terms of the liquidating trust make the liquidating trustee the attorney-in-fact for the debtor. And so even though they may be separate entities, I still don't think that allows this particular bankruptcy trustee, who is a creature of a bankruptcy plan, to be able to accept standing to prosecute claims without following Kaplan and Bogdan, which is to make those claims as state claims. If the Court has no other questions, I would cede the balance of my time. Thank you. Thank you. That concludes our docket for today.